738

Samuel Joseph MELVILLE, John David Hughey, III and Jane Lauren Alpert, Plaintiffs,

v.

Robert M. MORGENTHAU, both individually and as United States Attorney for the Southern District of New York; John H. Doyle, III, both individually and as Assistant Chief, Criminal Division, United States Attorney's Office for the Southern District of New York; John Doe, and Richard Roe (such names being fictitious), and others, both individually and as Foreman and Jurors, respectively of the Grand Jury for the Southern District of New York, Defendants.

No. 69 Civ. 5527.

United States District Court
S. D. New York.

Dec. 29, 1969.

Lefcourt, Garfinkle, Crain, Cohn, Sandler & Lefcourt, New York City, for plaintiffs Melville and Hughey, William E. Crain and Frederick H. Cohn, New York City, of counsel.

Sanford M. Katz, New York City, for plaintiff Alpert.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, for defendants, John H. Doyle, III, New York City, of counsel.

OPINION

POLLACK, District Judge.

This is a civil action brought for mandamus and injunctive relief to redress alleged denials of rights, privileges and immunities guaranteed by the United States Constitution. The plaintiffs in this case are defendants presently under indictment in the Southern District of

New York charged with conspiring to destroy federal property. The defendants herein are the United States Attorney for the Southern District of New York and his Assistant Chief of the Criminal Division.

The plaintiffs move for a preliminary and permanent injunction restraining the further prosecution of the plaintiffs herein under the pending criminal indictment against them, 69 CR. 811, and restraining the defendants from seeking any new indictment before another grand jury based either upon the same acts alleged in the indictment or any other acts allegedly committed as part of the alleged conspiracy to destroy governmental and other buildings in the County of New York by bombing. Plaintiffs also seek an order requiring an evidentiary hearing to determine whether the grand jury that returned the indictment in 69 CR. 811 was unbiased and otherwise legally constituted; and for an order requiring the conduct of a voir dire examination by the Court of any grand jury which might return a subsequent or superseding indictment with regard to the alleged conspiracy.

The plaintiffs were arrested on November 12, and 13, 1969 and were duly arraigned and bail was duly set. It is claimed that the arrest and all subsequent proceedings received widespread coverage in the local and national press and the broadcast media. Annexed to the complaint as exhibits A through Z are alleged examples of the publicity. These examples were supplemented at the time of the argument of the motion with additional news and magazine items dated both before and since the indictment. It is asserted that the publicity has been so widespread that no person of reasonable awareness and intelligence could possibly have avoided becoming aware of it including the grand jurors who returned the indictment and any other persons who might be called upon to serve on a grand jury in the Southern District of New York.

The complaint asserts that the publicity has, to a large extent, embodied alleged statements to the press of the United States Attorney's Office and that these statements have attempted to connect these plaintiffs to numerous bombings which have taken place in the past several months against various buildings in New York City including some that are federally owned. The complaint charges that the publicity must inevitably have the effect of giving rise to a substantial bias and prejudice against the plaintiffs in the minds of those who have read or heard about it, including the jurors on the grand jury for the Southern District of New York and any other persons who might be called on to serve on such grand jury.

Plaintiffs say that the publicity irreparably prejudiced the grand jury that returned the present indictment as well as any grand jury that might hereafter be presented with a request to hand up a superseding indictment on similar charges. It is claimed that the indictment was returned on Monday, November 17th (actually, it was Tuesday, November 18th) in ample time for the grand jurors to have read and heard the pre-indictment publicity beginning immediately after the plaintiffs' arrest. The plaintiffs claim that they have a guaranteed constitutional right to a fair and impartial grand jury. They claim that before a superseding indictment is filed they are entitled to ascertain whether the grand jury is unbiased or whether it has been irrevocably prejudiced by the alleged improper and unprofessional pre-indictment publicity which they attribute to the prosecutors.

The news reports which are annexed to the complaint as examples of the questioned publicity, announced the fact and circumstances of the arrest for four suspects in an alleged attempt to bomb Army equipment; the identity of the agency, the FBI, investigating the bombings which had been occurring and that that agency had effected the arrest; the evidence seized; and the charge of which those arrested were suspected. The reports referred without comment to the complaining affidavit on

which the arrest was made and the matters called to the attention of the United States Commissioner and later the District Judge on the public arraignment and the public hearing in respect to bail applications made by these plaintiffs and opposed by the government. The publicity mentioned that the authorities requested additional information and assistance from the public to hunt down further suspects and mentioned the failure of undercover agents and informants to come up with leads to the identity of the bombers of five Manhattan buildings; it spoke of the precautions being taken by private security forces; it stated the hunt by Police for more suspects; and asserted that the FBI investigation was going on all over the country.

The news reports also gave a brief description of the suspects arrested; and reported that the FBI had initially announced that the Four "had not been involved in the blast at the Criminal Courts building at 100 Centre Street" (this is not federal property). Later reports did attribute this explosion to the Four; and also mentioned bomb threats which turned out to be fictitious and a hoax; described bomb damage to certain buildings; and said that the Police welcomed any useful information.

A careful examination of all the news articles will show that they are reasonably restrained and proper under all the circumstances. The reference to these plaintiffs was as "suspects" and their backgrounds were portrayed in reasonably complimentary terms. Plaintiff Alpert was described therein as "very gentle", "pretty", "speaks very sincerely". Plaintiff Hughey was characterized as "intelligent", "gentle", "introverted". Plaintiff Melville was mentioned as a "gentleman" and the most derogatory statement concerning him is the description quoting someone that he was "a health nut who liked sunlight". The plaintiffs cannot be heard to complain of a term which they themselves employ publicly; Miss Alpert spoke of "the revolution" and Mr. Hughey is quoted as saying that "If the movement is going to join the revolution, it has to start letting go".

Even if the daily press was as assiduously read as these plaintiffs would have us suppose, there was no disqualifying matter involved sufficient to taint the grand jury process or to remove the legal impartiality of grand jurors or to taint the indictment which they returned. The published reports were not inciting or influential and lacked sensationalism. To the contrary, practically all of the news articles fairly served significant law enforcement and public interest functions.

The published reports do not purport to go beyond the public record in any material respect; they fairly describe the general scope of investigation by the law enforcement agency. The news article purporting to relate FBI surveillance of some of the plaintiffs on the date of the arrest also falls within the category of describing the facts and circumstances of the arrest. The publicity adds nothing that is materially or sufficiently inflammatory or inherently prejudicial to a fair consideration of evidence by a grand jury or inimical to a later fair public trial by an impartial jury.

There affirmatively appears to have been due observance by the press of recently approved standards for fair reports of criminal proceedings in the pre-indictment and post-indictment stages and of the proper restraint by a free press in observance of the rights of persons suspected and accused of crime.

■■ It is the function of a grand jury to investigate and accuse. It may even rely on rumor and hearsay in part. A presumption of regularity adheres to grand jury deliberations. It is well settled that an indictment returned by a legally constituted grand jury is sufficient to call for a trial on the merits, and this Court will not review the action of the grand jury in the absence of a clear showing of special circumstances. No special circumstances have been shown.

The record is barren of any evidence that any grand juror was improperly prejudiced, coerced or influenced by any publicity which may have appeared prior to or during their deliberations. Plaintiffs concede that this is so.

■ A specific showing of prejudice is necessary to vitiate an indictment and the papers before the Court consist solely of conjecture and are devoid of any proof that the grand jurors were improperly prejudiced by adverse publicity.

There has also been a failure to demonstrate any real likelihood of prejudice, and the type of publicity here does not constitute grounds for dismissal of the indictment.

■ It is elementary that the indictment is merely a charge which must be proved at trial beyond a reasonable doubt before there may be a conviction. The grand jury proceeding is not an adversary proceeding, open to the public, but rather investigatory and secret. To allow plaintiffs herein to conduct a voir dire of the grand jury to determine whether any member thereof was unduly influenced by reports in the news media would lead to chaos and confusion in the workings of the grand jury every time an indictment is returned in a case which catches the public eye and draws the attention of the press.

■ The public has a transcendent interest in the operation of the law enforcement and judicial processes. The public has the right to be informed about crime, law enforcement and the administration of justice. It is entirely permissible to fairly report public court proceedings and the matters arising therein.

The exhibits attached to the complaint herein quote the press as reporting that "No one in the office of the United States Attorney Robert M. Morgenthau would discuss the case or the defendants". Nothing appears to the contrary in the papers before the Court. And as indicated previously, the news reports do not depart from proper standards of fair reporting by a free press.

■ The plaintiffs have not shown reasonable probability of success of this suit or that the denial of a temporary injunction would result in irreparable injury to the plaintiffs. Balancing the conveniences and the public interest and the availability of an adequate remedy in the pending criminal case in orderly course, a preliminary injunction is not warranted herein. There is no specific evidence of partiality or improper bias on the part of any grand juror. There is little likelihood that a fair and impartial jury could not or will not be selected to try the charges. There is little likelihood that prejudice and harm will in fact result to these plaintiffs if an injunction be not granted.

Accordingly, the motion for a temporary injunction is, in all respects, denied.

The foregoing shall constitute the findings of the Court. Rule 52(a) F.R. Civ.P.

So ordered.